UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BERNT VONGRABE,

Plaintiff,

vs. Case No. 3:05-cv-1023-J-32MCR

GAIL WADSWORTH, State of Florida, et al.,

Defendants.
_______________________________________/

# REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on the Motions to Dismiss filed by Defendants, Donald Fleming and the state of Florida and Plaintiff's Motions for Summary Judgment. (Docs. 16, 23, 34 and 53). Plaintiff, Bernt vonGrabe, filed responses in opposition to each of the motions to dismiss (Docs. 19 and 25) and Defendant Fleming responded to Plaintiff's Motion for Summary Judgment (Docs. 40, 41). On February 8, 2006, the district judge entered an Order referring these motions to the undersigned for a report and recommendation. (Doc. 39).

## I. INTRODUCTION

Plaintiff filed a Complaint in this Court on October 10, 2005 and amended the Complaint on November 4, 2005. (Docs. 1 and 17). Plaintiff alleges that his civil rights were violated by numerous individuals. Specifically, Plaintiff claims that while living in a

---

[1] Any party may file and serve specific, written objections hereto with TEN (10) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Fed.R.Civ.P. 72(a), 6(a) and (e); Local Rules 6.02(a) and 4.20, United States District Court for the Middle District of Florida.

home with his daughter and her roommate, the daughter and her roommate conspired to have a court order entered against Plaintiff prohibiting him from coming within 500 feet of the house they were sharing. Plaintiff claims that as a result of this injunction, he has been unable to retrieve his personal property at the house and as such, his Fifth and Fourteenth Amendment rights have been violated. Plaintiff also argues that Florida Statute 741.30 is unconstitutional. (Doc. 17).

On November 4, 2005, Defendant Fleming filed a Motion to Dismiss. (Doc. 16). Plaintiff responded to this motion on November 15, 2005. (Doc. 19). On November 16, 2005, Defendant State of Florida filed a Motion to Dismiss (23) and Plaintiff filed a response to that motion on November 25, 2005. (Doc. 25). Plaintiff then filed a Motion for Summary Judgment on February 3, 2006. (Doc. 34).[2] On February 8, 2006, Judge Corrigan issued an Order of Referral (Doc. 39) requesting the undersigned enter a report and recommendation regarding appropriate resolution of several motions, including the instant motions.

## II. BACKGROUND FACTS

Taking the facts in the Complaint as true, the following is a brief factual background for this case. Plaintiff, a German citizen, is a permanent resident alien residing in Palm Coast, Florida. Until late July 2005, Plaintiff was living with his daughter, Defendant, Danielle von Grabe, and her room mate, Sarah Enloe, in a home in Palm Coast. According to Plaintiff, in July 2005, he discovered the women smoking marijuana in the home and later learned that Defendant Enloe stored a bag of marijuana

[2] Plaintiff also filed a Supplementary Motion for Summary Judgment on March 21, 2006. (Doc. 53).

in her bedroom. As a resident alien, Plaintiff was concerned about being connected to the use of illegal drugs. Accordingly, on July 27, 2005, Plaintiff confronted Enloe about her drugs and called the Sheriff's Department to report the drug use. Plaintiff claims Enloe then threatened to strike him, which caused Plaintiff to suffer chest pains. Two deputy sheriffs arrived and called an ambulance, which transported Plaintiff to Flagler County Memorial Hospital. Plaintiff was diagnosed as having suffered a heart attack. Plaintiff was transferred to Ormond Beach Heart Center where he underwent heart surgery on August 1, 2005.

While Plaintiff was in the hospital, his daughter applied for an injunction prohibiting Plaintiff from returning to the home by claiming that Plaintiff had attacked Enloe and that she was afraid of Plaintiff. (Doc. 1, Ex. 3). On July 29, 2005, the Circuit Court for the Seventh Judicial Circuit in Flagler County issued a temporary injunction preventing Plaintiff from having any contact with his daughter and forbidding him from coming within 500 feet of the house. Id. Additionally, the court set a hearing for August 9, 2005 at which, Plaintiff was to appear and testify and the court would make a decision regarding whether to issue a Final Judgment of Injunction and Protection Against Domestic Violence. Id.

According to Plaintiff, he was released from the hospital on August 2, 2005 "with bleeding wounds, fresh scars and open cuts subject to infection." (Doc. 17, ¶38). On August 3, 2005, Plaintiff drafted a motion seeking a continuance of the hearing scheduled for August 9, 2005 as he had recently been released from the hospital. (Doc. 1, Ex. 4). The motion also sought an order compelling Plaintiff's daughter to release Plaintiff's property. Id. That same day, Plaintiff claims he gave the motion to a deputy

clerk at the courthouse in Bunnell, Florida. According to Plaintiff, the clerk directed Plaintiff to file his motion at the IRS office in the same building. Plaintiff refused to do so and the clerk allegedly placed the motion in "a heap of other papers." (Doc. 17, ¶47). Apparently the court did not rule on Plaintiff's motion and conducted the hearing on August 9, 2005. Subsequently, a Final Judgment of Injunction was entered again prohibiting Plaintiff from contacting his daughter or coming within 500 feet of the home. (Doc. 1, Ex. 5). The injunction further required Plaintiff to enroll in and complete a certified batterers' intervention program. Id. With respect to Plaintiff's personal property, the injunction provided that Plaintiff, in the presence of a law enforcement officer, could return to the home:

> at a time arranged with the law enforcement department with jurisdiction over the home, accompanied by a law enforcement officer only, for the purpose of obtaining his or her clothing and items of personal health and hygiene and tools of the trade. A law enforcement officer with jurisdiction over the premises shall go with [Plaintiff] to the home and stand by to insure that he/she vacates the premises with only his/her personal clothing, toiletries, tools of the trade, and any items listed in paragraph 10 below. [Paragraph 10 was left blank]

(Doc. 1, Ex. 5).

Plaintiff claims he went to the Sheriff's Office to recover his property but was informed that he first needed to have a time arranged with his daughter. Accordingly, Plaintiff attempted numerous times to contact his daughter to obtain a time to pick up his property. His daughter did not respond. Plaintiff alleges that upon the direction of the Sheriff, he wrote his daughter a letter asking for a date and time to pick up his property. On September 1, 2005, Plaintiff again went to the Sheriff's Office to obtain his

property. This time, an officer called Plaintiff's daughter and left a message requesting she contact her father to set a time for him to retrieve his property. That day, Plaintiff's daughter appeared at Plaintiff's place of employment, brought Plaintiff's paycheck and suggested Plaintiff retrieve his property the following Saturday.

That Saturday, Plaintiff was accompanied by a deputy to his daughter's home to retrieve his property. He was given only fifteen minutes to retrieve all of his personal property. According to Plaintiff, he was not able to obtain all of his property in this amount of time and the stress of it caused him to suffer chest pains.

Thereafter, Plaintiff's daughter filed a criminal complaint against Plaintiff alleging he contacted her directly or indirectly on or about September 1, 2005 (apparently referring to the letter Plaintiff sent her upon direction from the Sheriff). The State Attorney filed charges against Plaintiff for violation of an injunction for protection against domestic violence. As of the date of Plaintiff's Amended Complaint, he had not been able to access all of his property.

## III. ANALYSIS

### A. Defendant, Donald Fleming's Motion to Dismiss (Doc. 16)

Counts I and II of Plaintiff's Amended Complaint are the only two counts attempting to state claims against Defendant Fleming. These counts (which appear to be duplicates of each other) allege the Sheriff deprived Plaintiff of his "equal protection under the laws, his right to due process and his right to his property." (Doc. 17, ¶¶87, 94). Specifically, Plaintiff argues that Sheriff Fleming, as the "sole agent of the Circuit Court, appointed to supervise contact visits between two parties under injunction for the

purpose to retrieve property belonging to one," is responsible for Plaintiff's inability to recover his property because he was only provided with fifteen minutes to do so. (Doc. 19, p.3).

Defendant Fleming asks the Court to dismiss Plaintiff's Amended Complaint for numerous reasons. Initially, Fleming argues Plaintiff's Fifth Amendment claims must be dismissed because the protections afforded by the Fifth Amendment are applicable only to federal actions. Next, Fleming attacks Plaintiff's Fourteenth Amendment claims by arguing that Plaintiff failed to allege any basis for the official capacity liability of Sheriff Fleming. Fleming also claims Plaintiff's Fourteenth Amendment claims must fail as Plaintiff had an adequate state remedy, of which he failed to avail himself. Finally, Fleming argues Plaintiff's Fourteenth Amendment equal protection claims must fail because Plaintiff failed to allege that any similarly situated persons were treated differently. The Court will address each of these arguments.

As an initial matter, the Court notes: "'a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.'" Bearelly v. Florida Dept. of Corrections, 2002 WL 400779 *1 (M.D. Fla. 2002) (quoting, Cook & Nichol, Inc. v. Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971)). In evaluating a motion to dismiss, "the allegations of the complaint must be accepted as true and viewed in the light most favorable to the plaintiff." Bearelly, 2002 WL 400779 at *1 (citations omitted).

**1. Plaintiff's Fifth Amendment Claims**

Fleming argues Plaintiff's Fifth Amendment claims must be dismissed because the protections afforded by the Fifth Amendment are applicable only to federal actions. The Court agrees. The Fifth Amendment is applicable to the actions of federal, not state government. Johnson v. Cannon, 947 F. Supp. 1567, 1572 (M.D. Fla. 1996) (citing, Barron v. City of Baltimore, 32 U.S. 243, 7 Pet. 243, 8 L.Ed. 672 (1833) and Newsom v. Vanderbilt Univ., 653 F.2d 1100, 1113 (6th Cir. 1981)). As Plaintiff has made no allegations that any federal actors were involved, the Court will grant the Motion to Dismiss as to any alleged Fifth Amendment violation.

**2. Plaintiff's Fourteenth Amendment Claims**

Fleming argues Plaintiff's Fourteenth Amendment due process claims should be dismissed because Plaintiff failed to allege any basis for Fleming's official capacity liability. Fleming also claims Plaintiff's Fourteenth Amendment due process claims must fail as Plaintiff had an adequate state remedy, of which he failed to avail himself. Finally, Fleming argues Plaintiff's Fourteenth Amendment equal protection claims must fail because Plaintiff failed to allege that any similarly situated persons were treated differently. Plaintiff responds initially that he was not required to make any of these showings because he is suing directly under the Fourteenth Amendment, rather than pursuant to 42 U.S.C. §1983. (Doc. 19, p.4). The Court will address this argument first.

In making his claim that he is entitled to pursue a direct cause of action under the Fourteenth Amendment, Plaintiff points to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999 (1971). In that case, the

Supreme Court determined the existence of a direct cause of action under the Fourth Amendment where an individual was deprived of a Constitutional right by a federal officer. Bivens, 403 U.S. at 397, 91 S.Ct. at 2005. In Bivens, the plaintiff had no other means of redressing his injuries. Here, however, Section 1983 is available to remedy wrongs committed by "persons" acting under "color of state law." Plaintiff has not identified and this Court has not located a case expressly extending the Bivens rationale to the Fourteenth Amendment. Instead, courts are hesitant to find causes of actions arising directly from the Constitution. This reluctance stems in part from the "awareness that the framers of the Constitution saw fit to entrust the job of legislating to Congress [and] Congress has provided a means of seeking relief against state officials who violate the Constitution [with 42 U.S.C. §1983]." Strong v. Demopolis City Bd. of Ed., 515 F.Supp. 730, 731 (S.D. Ala. 1981). Accordingly, the Court finds Plaintiff's claims are brought pursuant to §1983 and rejects his contention that he is entitled to pursue an action directly under the Constitution.

**a. Official Capacity Liability**

Fleming argues Plaintiff's claims against him must be dismissed as Plaintiff has failed to show any basis for holding Sheriff Fleming liable in this case. Section 1983 provides that:

> Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any State . . ., subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. §1983. When, as here, the defendant in a §1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents--in this case, Flagler County. See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1115 (11th Cir. 2005). Fleming correctly notes that even though the Supreme Court has held that counties (and other local government entities) are "persons" within the scope of §1983, and subject to liability, Plaintiff cannot rely upon the theory of respondeat superior to hold the County liable. See Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 692, 98 S.Ct. 2018 (1978) (finding that §1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989) (quoting, Springfield v. Kibbe, 480 U.S. 257, 267, 107 S.Ct. 1114, 1119 (1987) (O'Connor, J., dissenting)).

Accordingly, to impose §1983 liability on a municipality, a plaintiff must show: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing Canton, 489 U.S. at 388, 109 S.Ct. 1197). Here, Fleming argues Plaintiff failed to allege any custom or policy on the part of the Sheriff's Office, which caused a violation of his constitutional rights. In reviewing Plaintiff's Amended Complaint, it appears that his due process claims against the Sheriff result from the fact

that he was only provided with fifteen minutes to recover his property from his daughter's home. It is not clear whether Plaintiff claims the fifteen minutes was a policy of the Sheriff's Office or whether it resulted from the inappropriate conduct of one deputy. As this issue may be dispositive and Plaintiff is proceeding pro se, the undersigned believes it would not be appropriate to dismiss Plaintiff's case on this basis. As further discussed in the following section, the undersigned finds Plaintiff should be provided an opportunity to clarify his claims with respect to the time he was allowed to recover his property. Accordingly, the undersigned recommends Defendant Fleming's Motion to Dismiss be denied on these grounds.

**b. Adequate State Remedy**

Fleming also argues Plaintiff's claims must be dismissed because Plaintiff had an adequate state remedy available of which he failed to take advantage. Specifically, Fleming claims Plaintiff could have pursued an action for replevin, conversion or could have sought modification of the injunction order regarding his personal property. (Doc. 16, pp. 13-14). Plaintiff responds that he did not have any adequate state remedy because "Florida state courts have a long history of gender bias." (Doc. 19, p.5).

The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. In its interpretation of this clause, the Supreme Court has determined it provides two types of due process protection: substantive and procedural due process. McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (*en banc*), cert. denied, 513 U.S. 1110, 115 S.Ct. 898 (1995) (citing, Zinermon v. Burch, 494 U.S. 113,

125, 110 S.Ct. 975, 983 (1990)). A violation of either of these kinds of protection may form the basis for a suit under §1983. Id.

Defendant is correct that the Eleventh Circuit has held a plaintiff cannot state a procedural due process claim if adequate state remedies are available to him. See Cotton v. Jackson, 216 F.3d 1328 (11th Cir. 2000); McKinney, 20 F.3d 1550. As this rule only applies to procedural due process claims, it is first necessary to determine whether Plaintiff's Amended Complaint attempts to state a claim for a substantive or procedural due process violation.

The substantive component of the Due Process Clause protects "fundamental" rights or those rights that are "'implicit in the concept of ordered liberty.'" McKinney, 20 F.3d at 1556 (quoting, Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152 (1937)). The McKinney court further noted that:

> areas in which substantive rights are created only by state law (as is the case with tort law and employment law) are not subject to substantive due process protection under the Due Process Clause because "substantive due process rights are created only by the Constitution."

Id. (quoting, Regents of University of Michigan v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507, 515 (1985) (Powell, J., concurring)). A violation of a substantive due process right is complete at the time it occurs and therefore, the availability of any state remedy is irrelevant. Id. On the other hand, the violation of a procedural due process right does not occur "unless and until the State fails to provide due process." Id. (quoting, Zinermon, 494 U.S. at 123, 110 S.Ct. at 983).

In this case, Plaintiff only alleges a deprivation of his personal property without due process of law. Specifically, Plaintiff claims the deputy providing him with only fifteen minutes to recover his property resulted in a taking of his property without due process. He does not claim any violation of a right, privilege or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment. As such, Plaintiff's claim is a procedural due process claim. Accordingly, the existence of an adequate state remedy is relevant.

In support of his claim that Plaintiff has adequate state remedies, Fleming cites Parratt v. Taylor, 451 U.S. 527, 539, 101 S.Ct. 1908, 1914 (1980), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662 (1986) and McKinney v. Pate, 20 F.3d 1550. (Doc. 16, pp. 12-14). In Parratt, the Court held that due process did not require a pre-deprivation hearing when such would be impracticable (i.e. where the deprivation was caused by negligent conduct which could not be predicted). Parratt, 451 U.S. at 540-411, 101 S.Ct. at 1915-16. Instead, the Court found that post-deprivation remedies would be sufficient to provide due process. Id.; see also, Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194 (1984) (extending the Parratt rationale to intentional conduct which could not be predicted). However, the Supreme Court noted that the Parratt rationale did not apply to cases in which the deprivation of property is caused by conduct pursuant to established state procedure rather than a random and unauthorized action. Logan v. Zimmerman Brush Co., 455 U.S. 422, 436,102 S.Ct. 1148, 1158 (1982); see also, Burch v. Apalachee Community Mental Health Services, Inc., 840 F.2d 797, 801 (11th Cir. 1988), aff'd, 494 U.S. 113, 110 S.Ct. 975 (1990)

(holding that post-deprivation remedies do not provide due process if a pre-deprivation remedy is practicable). In this case, as noted in the previous section, it is not clear whether Plaintiff alleges the deputy providing him only fifteen minutes to gather his property was acting on his own volition or pursuant to a policy/procedure of the Sheriff's Office. Accordingly, the undersigned believes it is appropriate to allow Plaintiff, who is proceeding pro se, an opportunity to amend his complaint to clarify whether it is his belief that the deputy who provided him with only fifteen minutes to retrieve his property was acting on his own volition or pursuant to a policy of the Sheriff's Office.[3]

### C. Plaintiff's Equal Protection Claims

Fleming also asks the Court to dismiss Plaintiff's equal protection claims against him. Although Counts I and II do claim that Plaintiff was "deprived of his rights to equal protection under the laws" (Doc. 17, ¶¶87, 94), the Court finds no allegations against Fleming which would support an equal protection claim.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985) (quoting, Plyler v. Doe, 457 U.S. 202, 216, 102 S.Ct. 2382, 2394 (1982)). "[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately." Thigpen

[3] Simultaneously with the entry of this Report and Recommendation, the undersigned is entering an Order addressing Plaintiff's Motion to Amend (Doc. 49). That Order provides Plaintiff with some guidance in the filing of his Second Amended Complaint.

v. Bibb County, Ga., Sheriff's Dept, 223 F.3d 1231, 1237 (11th Cir. 2000), *abrogation on other grounds recognized by* Watson v. Blue Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003). Courts recognize equal protection claims brought by a "class of one," where the plaintiff "alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074 (2000).

Fleming is correct that Plaintiff has not pled he was treated differently than similarly situated individuals nor has he identified the manner in which he claims to have been treated differently. As such, Plaintiff cannot maintain an equal protection claim. The Court suspects Plaintiff did not intend to claim denial of equal protection by Defendant Fleming, however, as the Court is permitting Plaintiff to file an amended complaint to address the due process claim, it will permit Plaintiff (only if Plaintiff is able to do so) to address the equal protection claim. If Plaintiff believes he is able to state a valid equal protection claim, Plaintiff should include a separate count addressed to the equal protection claim and specify against whom the claim is directed. Plaintiff is cautioned that Rule 11 of the Federal Rules of Civil Procedure provides for the impositions of sanctions if it is determined Plaintiff has brought any claims for an improper purpose, that they are not warranted by existing law or that there is not a reasonable factual support for the allegations or assertions made.

The Court is making no ruling regarding the ultimate merit of Plaintiff's claims. Rather, it simply finds that based on Fleming's arguments for dismissal and based on a

fair reading of the Amended Complaint, dismissal for failure to state a claim is not warranted at this time.

**B. Defendant, State of Florida's Motion to Dismiss (Doc. 23)**

The State argues Plaintiff's Amended Complaint should be dismissed against it for several reasons. First, the State claims the Amended Complaint should be dismissed based on Eleventh Amendment Immunity. Next, the State argues the Amended Complaint fails to state a cause of action against it pursuant to 42 U.S.C. §1983. Finally, the State claims it is not a proper party in the declaratory action. (Doc. 23, p.2). Plaintiff responds that he is not seeking any damages against the State and that it is only joined as a party with respect to his claim regarding the unconstitutionality of Florida Statute §741.30. Accordingly, the Court will only address the State's claim that it is not a proper party in Plaintiff's declaratory judgment claim regarding §741.30.

The State correctly notes that "[u]nder United States Supreme Court precedent, when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant, even when that party has made no attempt to enforce the rule." American Civil Liberties Union v. The Florida Bar, 999 F.2d 1486, 1490 (11th Cir. 1993) (citing, Diamond v. Charles, 476 U.S. 54, 64, 106 S.Ct. 1697, 1704 (1986)). The State does not indicate who the state official designated to enforce Florida Statute § 741.30 is but through its own research, the Court believes the Commissioner of the Florida Department of Law Enforcement, Guy M. Tunnell, would be that official. Accordingly, the Court will recommend the State's Motion to Dismiss be granted and the State will be dismissed as a party to this litigation. In

drafting his Second Amended Complaint, Plaintiff is directed to name the official designated to enforce Florida Statute §741.30 as a defendant in the claims regarding the unconstitutionality of Florida Statute §741.30.

**C. <u>Plaintiff's Motion for Summary Judgment (Doc. 34)</u>**

Plaintiff filed a Motion for Summary Judgment (Doc. 34) and a "supplemental" Motion for Summary Judgment (Doc. 53) asking the Court to find Fleming's conduct in only permitting fifteen minutes to gather his belongings unconstitutional. The motions also asked the Court to bifurcate the damage phase of Plaintiff's claims from the liability phase. Fleming responded by filing a Motion to Stay Consideration of Plaintiff's Motion for Summary Judgment asking the Court to defer ruling on the Motion until the parties had engaged in discovery (Doc. 40). Alternatively, Fleming filed a Motion to Strike (Doc. 41) Plaintiff's Motion for Summary Judgment as it fails to comply with Local Rule 3.01(c) because it is over twenty pages in length. Local Rule 3.01(c) provides that "no party shall file any brief or legal memorandum in excess of twenty (20) pages in length," without first obtaining permission from the Court. Local Rule 3.01(c), Local Rules for the Middle District of Florida. Fleming points out that Plaintiff filed a Motion for Summary Judgment (Doc. 34), which was ten pages in length and a separate memorandum of law (Doc. 35), which was thirteen pages in length.

Fleming is correct that the Court prefers parties to file their motions and memoranda in one document and that document is not to exceed twenty pages in length without prior permission from the Court. Accordingly, Plaintiff is cautioned that he should not file any document in excess of twenty pages without first obtaining permission from the Court.

In light of the recommendation to allow Plaintiff to amend his Complaint and because the parties have only begun to engage in discovery, Plaintiff's Motions for Summary Judgment are not appropriate at this time and the undersigned will recommend they be denied without prejudice. The District Court will enter a Case Management and Scheduling Order, which will give the parties a deadline in which to complete discovery. It will also provide a deadline for filing dispositive motions. Plaintiff should wait until the completion of discovery before filing a renewed motion for summary judgment.[4] This will enable both parties to have a complete picture of the case before having to either file or respond to a motion for summary judgment.

Accordingly, after due consideration, it is

**RECOMMENDED**:

1. Defendant, Donald Fleming's Motion to Dismiss (Doc. 16) be **GRANTED in part and DENIED in part**. Plaintiff's claims pursuant to the Fifth Amendment should be dismissed for failure to state a claim. However, Plaintiff should be provided with an opportunity to amend his complaint to clarify his Fourteenth Amendment claims as noted in the body of this Report and Recommendation and as further provided in the Court's Order regarding his Motion to Amend being filed simultaneously with this Report and Recommendation.

2. Defendant, State of Florida's Motion to Dismiss (Doc. 23) should be **GRANTED**.

---

[4] Plaintiff shall also ensure that he files a combined motion and memorandum of law and that the document does not exceed twenty pages in length.

3. Plaintiff's Motions for Summary Judgment (Docs. 34 and 53) should be **DENIED without prejudice** to Plaintiff filing a renewed motion for summary judgment after the completion of discovery.

4. Defendant's Motion to Stay Consideration of Plaintiff's Motion for Summary Judgment (Doc. 40) and Defendant's Motion to Strike Plaintiff's Motion for Summary Judgment (Doc. 41) should be **DENIED as moot**.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this 4th day of April, 2006.

Monte C. Richardson

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Timothy J. Corrigan,
United States District Judge,

Counsel of Record